UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PRUESNER,

    Petitioner,

v.                                                    CASE NO. 2:20-CV-12164
                                                      HONORABLE VICTORIA A. ROBERTS

RANDEE REWERTS,

    Respondent.
_____/

**OPINION & ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
& DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Robert Pruesner ("Petitioner") was convicted of armed robbery and first-degree home invasion following a jury trial in the Oakland County Circuit Court and was sentenced, as a fourth habitual offender, to concurrent terms of 25 to 50 years imprisonment and 15 to 40 years imprisonment in 2017. In his pleadings, Petitioner raises claims concerning the effectiveness of his two trial attorneys (collectively referred to as trial counsel). The Court concludes that Petitioner is not entitled to habeas relief on his claims.

**II.    Facts and Procedural History**

Petitioner's convictions arise from the home invasion and armed robbery of a man named Chaz Green at his home in Oakland County, Michigan in August, 2016. The Michigan Court of Appeals described the underlying facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> According to the record, shortly after Chaz Green's girlfriend left for the night, a man, wearing all black, with a "beanie" on his head and a bandana around his mouth, forcibly entered Green's house through the back door. Green ran to the bedroom and the man followed him there. The man, while holding a handgun, told Green to give him "all the cash" or he would kill Green. Green gave him a bag that contained about $700. The man demanded the rest of the cash, so Green went into the living room, where he retrieved approximately $1,000 he had hidden there. The man demanded more money and pulled out a second gun. Green testified that when he did so, the bandana slipped down and Green had "a better view of his face for just a split second." The man threatened to kill Green if he called the police. Green waited a day before calling the police.
>
> Green testified that he believed that defendant was the person who robbed him. He explained that he had met defendant at a bar through his cousin, Bradley Ormsby, about a month before the crime. Green said that defendant noticed that he carried a lot of cash, and Green explained to defendant that he did not "believe in banks." Green said that he may have told defendant about a recent lawsuit settlement that he received. Green testified that only three people knew where he lived: his girlfriend, Ormsby, and Ormsby's friend "Reese." Green told law enforcement that he believed Ormsby set up the robbery. Ormsby testified and denied any involvement in the crime and denied that he told defendant where Green lived. Defendant did not testify.

*People v. Pruesner*, No. 337576, 2018 WL 4575146, *1 (Mich. Ct. App. Sept. 20, 2018) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right, along with a motion to remand for an evidentiary hearing, with the Michigan Court of Appeals raising the following claims:

    I.    Trial counsel were constitutionally ineffective in failing to argue against admission of his prior convictions for breaking and entering a building, home invasion second degree, and receiving and concealing stolen property for impeachment, where his testimony [Pruesner's] was crucial to the decisional process and the prior convictions were only moderately probative of veracity.

    II.    He was denied his Sixth Amendment right to the effective assistance of counsel where his trial attorneys failed to investigate a potential alibi witness, and failed to file the required notice of intent to present an alibi defense and present the alibi witness, which would have been consistent with the defense theory at trial that he was misidentified as the perpetrator of the charged offenses.

The Michigan Court of Appeals remanded the case to the trial court for an evidentiary hearing "limited to the claim that defense counsel was ineffective because he failed to object to the use of defendant's prior convictions under MRE 609." *Id.* at *3 (order following opinion). The prosecution filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Pruesner*, 503 Mich. 912, 919 N.W.2d 641 (Mich. 2018) (unpublished).

The trial court then held an evidentiary hearing during which both of Petitioner's trial attorneys and Petitioner testified. Defense counsel James Makowski testified that he met with Petitioner before trial, was aware of his prior convictions, thought that he had a good reasonable doubt defense and a possible alibi defense via his mother, and wanted him to testify at trial. At their very first meeting, however, Petitioner refused and said that he did not want to take the stand. 11/30/18 Evid. Hrg., pp. 9, 12-13, ECF No. 6-8, PageID.237, 240-241. Makowski testified that part of the reason that he did not file a motion in limine to exclude the prior convictions was due to ambiguity about who was representing Petitioner for a period of time. *Id*. at pp. 18-19, ECF No. 246-247. Makowski testified that he and defense counsel Elisha Oakes ultimately decided to work together and met on November 28, 2016. At that meeting, they discovered that Petitioner had given them "widely divergent versions of the story" that were "mutually exclusive," so they decided to conduct a joint meeting with Petitioner at the jail. *Id*. at pp. 24-25, PageID.252-253. During that joint meeting, Petitioner confessed to committing the crime and said that his mother had lied to the police to give him an alibi. *Id*. at p. 26, PageID.254. The attorneys realized they could not call Petitioner to the stand, *id*. at p. 27, PageID.255, and they informed Petitioner of this fact. *Id*. at p. 34, PageID.262.

Makowski recalled discussing Petitioner's prior convictions for similar crimes with him and stated that they would only have been admissible if Petitioner testified. *Id.* at pp. 28-29, PageID.256-257. Makowski also recalled that the victim was aware of Petitioner's prior convictions (through a family member) and explained that if the victim brought them up, it would be grounds for seeking a mistrial or dismissal. *Id*. at p. 31, PageID.259. Makowski believed that he informed Petitioner that he could be impeached with his prior convictions if he testified at trial. *Id*. at p. 36, PageID.264. Once Petitioner refused to take the stand and confessed to the crime during the joint meeting, the defense strategy was to "poke holes' in the case, namely challenging the police investigation and the victim's credibility. *Id*. at p. 27, PageID.265. Makowski testified that he told Petitioner that he understood why he did not want to testify and explained that he advised Petitioner not to testify because of his admission of guilt, not because of his prior convictions. *Id*. at p. 44, PageID.272. He also stated that if Petitioner had been able to testify, he would have challenged the admissibility of the prior convictions. *Id*. at p. 46, PageID.274.

Defense counsel Elisha Oakes testified that she met with Petitioner several times before trial, 11/30/18 Evid. Hrg. Tr., p. 57, ECF No. 6-9, PageID.285. When she first met with him, he "made it very clear that he did not want to testify." *Id*. at p. 59, PageID.287. She testified that the prior criminal convictions were one reason to not testify, but that another reason arose at the joint meeting, and that her defense strategy was to attack the credibility of the witnesses. *Id.* She was aware of Petitioner's mother as a potential alibi witness, but noted that there were discrepancies in the stories told by Petitioner and his mother. *Id*. at pp. 60-61, PageID.288-289. Oakes ruled out the alibi defense after the joint meeting in which Petitioner admitted his guilt and she realized that his mother was lying. *Id*. at p. 62, PageID.290. Oakes confirmed that the joint meeting was

necessitated by the fact that Petitioner told her and Makowski different versions of events and they needed the meeting to clarify matters. *Id*. at p. 63, PageID.291.

Oakes recalled asking Petitioner if he wanted to testify and he declined. She advised him that if he testified, his prior convictions could be admissible unless the judge found them more prejudicial than probative. She noted that her advice changed once Petitioner admitted his guilt and she then advised him that they could not put him on the stand. *Id*. at p. 65, PageID.293. Oakes recalled getting the prosecution notice about the prior convictions, but she was not aware of any witness, other than Petitioner, who could testify about them. *Id*. at pp. 67, 70, PageID.295, 298. Oakes explained that she did not file a motion in limine because Petitioner made it very clear from the preliminary examination to the day of trial that he was not testifying. *Id*. at p. 70, PageID.298. She also testified that Petitioner admitted his guilt at the joint meeting and that he, at that meeting or subsequent meetings, provided factual details of the crime, including the involvement of others. *Id*. at p. 71, PageID.299. After Petitioner decided that he did not want to testify and then admitted his guilt, the attorneys advised him that if he changed his mind and chose to testify, they would be very limited in their ability to question him and, if he lied on the stand, they would have to withdraw. *Id*. at pp. 82-83, PageID.310-311. Oakes confirmed that the attorneys decided not to call Petitioner to testify, unless he demanded to do so, after he admitted his guilt due to ethics, as well as concerns about his credibility and prior convictions. *Id*. at p. 83, PageID.311. The defense strategy at trial was to attack the prosecution witnesses' credibility and the police investigation and to argue reasonable doubt. *Id*. at pp. 85-87, PageID.313-315. Oakes also testified that she and Petitioner met after trial to discuss sentencing and Petitioner said that he would testify against two other people who were involved in the crime in exchange for sentencing consideration. *Id*. at p. 91,

5

PageID.319.

Petitioner testified that when he met with Oakes before the preliminary examination, she advised him not to testify at the preliminary examination and told him that if he testified at trial "it would sway the jury to believe that [he] was guilty" because of his similar prior criminal history. 11/30/18 Evid. Hrg., pp. 106-108, ECF No. 6-10, PageID.334-336. He said that there was no other reason for him not to testify. *Id*. at p. 108, PageID.336. Petitioner testified that at the joint meeting, the attorneys initially disagreed about the case, but then decided that the defense would be to rely on the lack of evidence and for him to remain silent. He denied telling the attorneys that he committed the crime and denied giving them details about the crime at that meeting or any other time. *Id*. at pp. 109-110, PageID.337-338.

Petitioner said that he waived his right to testify based on his attorneys' advice and his past criminal history. *Id.* at p. 110, PageID.338. Petitioner said that he wanted to testify initially, but changed his mind when he learned that his criminal history could be used against him. He said that if the prior convictions would have been kept out, he would have testified at trial. *Id*. at p. 116, PageID.344. Upon further questioning, Petitioner also stated that, in retrospect, he would have testified even if the convictions were admitted. *Id*. at p. 118, PageID.346. Petitioner denied telling Oakes that he would testify against two others for a sentencing deal. *Id*. at p. 119, PageID.347.

At the conclusion of the hearing, the trial court credited the testimony of the trial attorneys, found that they had strategic and ethical reasons for ultimately advising Petitioner not to testify at trial, concluded that the attorneys were not ineffective, and indicated that the court would deny the motion for new trial. 11/30/18 Evid. Hrg., pp. 141-146, ECF Nos. 6-10, 6-11, PageID.369-374.

The Michigan Court of Appeals subsequently denied Petitioner relief on his claims and

affirmed his convictions. *People v. Pruesner* (After Remand), No. 337576, 2019 WL 1085468, *1 (Mich. Ct. App. March 7, 2019). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order, *People v. Pruesner*, 504 Mich. 947, 931 N.W.2d 317 (2019).

Petitioner thereafter filed his federal Habeas Petition raising the same two ineffective assistance of counsel claims presented to the state courts on direct appeal of his convictions. ECF No. 1. Respondent filed an Answer to the Petition contending that it should be denied for lack of merit. ECF No. 5.

### III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

7

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then

8

it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.

Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

9

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**IV.    Discussion**

    **A.    Ineffective Assistance of Counsel - Prior Convictions Claim**

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to file a motion in limine to exclude his prior convictions, which precluded him from testifying on his own behalf at trial. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not

10

functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performances. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When

11

§ 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> At the hearing, the two attorneys who represented defendant at his criminal trial each testified that defendant did not want to testify during the trial. Defendant testified at the hearing and agreed with this assessment, but asserted that he reached this decision only after being told by counsel that his criminal convictions would be used against him if he testified during the trial.
>
> We have held that counsel is not ineffective for failing to file a motion in limine opposing the introduction of prior convictions when the defendant indicated that he never intended to testify. *People v. Marshall*, 298 Mich. App. 607, 615-616; 830 N.W.2d 414 (2012), *vacated in part on other grounds* 493 Mich. 1020 (2013). In this case, the trial court found credible the attorneys' testimony that defendant definitely was not going to testify. Further, both attorneys testified that defendant eventually admitted to them that he had committed the crime and thus the attorneys believed that they could not ethically put defendant on the stand. "[A]n attorney's refusal to knowingly assist in the presentation of perjured testimony is not only consistent with ... ethical obligations, but cannot be the basis of a claim of ineffective assistance of counsel." *People v. Toma*, 462 Mich. 281, 303 n.16; 613 N.W.2d 694 (2000). While defendant denied making this admission to defense counsel, the trial court found the attorneys' testimony credible. Deferring to the trial court's credibility determination, *People v. Cartwright*, 454 Mich. 550, 555; 563 N.W.2d 208 (1997), we conclude that defendant did not demonstrate that he was denied effective assistance of counsel.

*Pruesner* (After Remand), 2019 WL 1085468 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. At the evidentiary hearing, Petitioner's trial attorneys testified that they did not file a motion in limine to exclude Petitioner's prior convictions, in part, because Petitioner was adamant that he did not want to testify at trial and his prior convictions were otherwise not going to be admissible against him. Such conduct was reasonable,

particularly given that they were able to challenge the police investigation and the victim's credibility and argue reasonable doubt without Petitioner's testimony. *See, e.g., Marshall v. Haas*, No. 14-11878, 2017 WL 24789, *9 (E.D. Mich. Jan. 3, 2017) (denying habeas relief on similar claim that trial counsel was ineffective for not filing a motion in limine to exclude prior convictions where the petitioner did not testify at trial); *see also Greene v. Lafler*, 447 F. Supp. 2d 780, 794 (E.D. Mich. 2006) (trial counsel was not ineffective for failing to effectively argue for exclusion of petitioner's prior conviction, even if he might have testified had conviction been suppressed, where he did not testify, there was no mention of the prior conviction at trial, and counsel was able to adequately present defense of misidentification without his testimony).

Moreover, Petitioner's attorneys also testified that when they confronted Petitioner with his inconsistent stories and he admitted his guilt of the offense, they agreed that he could not testify at trial for ethical reasons (such that a motion to exclude his prior convictions was unnecessary) and they would instead focus on challenging the police investigation and the victim's credibility in an effort to create reasonable doubt about his guilt. Such a strategy was reasonable under the circumstances. To be sure, an attorney cannot be ineffective for abiding by ethical duties and refusing to present perjured testimony. *See Nix v. Whiteside*, 475 U.S. 157, 176 (1986) ("If a 'conflict' between a client's proposal and counsel's ethical obligation gives rise to a presumption that counsel's assistance was prejudicially ineffective, every guilty criminal's conviction would be suspect if the defendant had sought to obtain an acquittal by illegal means. Can anyone doubt what practices and problems would be spawned by such a rule and what volumes of litigation it would generate?"). The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).

13

Petitioner alleges that he wanted to testify at trial and he only refused to do so after trial counsel told him that his prior convictions would be admitted against him. He further alleges that he never admitted his guilt to counsel. The trial court (and the Michigan Court of Appeals), however, rejected Petitioner's testimony to that effect and instead credited trial counsel's testimony at the evidentiary hearing. Such credibility determinations are presumed correct and entitled to deference on habeas review. 28 U.S.C. § 2254(e)(1); *Davis v. Ayala*, 576 U.S. 257, 271 (2015); *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003); *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). A habeas petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 576 U.S. at 271; *see also Miller-el v. Dretke*, 545 U.S. 231, 265 (2005) (a habeas court cannot disturb a trial court's credibility determination unless evidence is presented that is "too powerful to conclude anything" other than an erroneous determination by the trial court). Petitioner makes no such showing. The evidentiary hearing record supports the Michigan Court of Appeals' denial of relief. Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

**B.     Ineffective Assistance of Counsel - Alibi Claim**

Petitioner also asserts that trial counsel was ineffective for failing to sufficiently investigate his alibi defense and call his mother to testify as an alibi witness. Respondent contends that this claim lacks merit.

As discussed, in order to prevail on an ineffective assistance of counsel claim, a petitioner must prove that trial counsel's performance was deficient and that counsel's performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*.

14

at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. As to the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*.

The Michigan Court of Appeals did not distinctly address this issue on direct appeal, but the court nonetheless concluded that trial counsel was not ineffective and affirmed Petitioner's convictions. *Pruesner* (After Remand), 2019 WL 1085468 at *1. Accordingly, the Court must presume that the court rejected the claim on the merits and apply the AEDPA's deferential standard of review. *See Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017) ("[W]hen a state court [is] faced with a habeas petitioner's constitutional argument but silently rejected it, 'a federal habeas court must presume' that the state court adjudicated the federal claim on the merits.").

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1] It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must

---

[1]The Court notes that it would reach the same result under a de novo standard of review.

15

be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call a known alibi witness can constitute ineffective assistance of counsel, *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004), but counsel is not required to call a witness whose credibility is questionable. *Thurmond v. Carlton*, 489 F. App'x 834, 840 (6th Cir. 2012). The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

The record here indicates that trial counsel's performance was not deficient. At the evidentiary hearing, Petitioner's trial attorneys testified that they reviewed the police reports, spoke with Petitioner, and were aware that his mother could be a potential alibi witness. Counsel decided not to call Petitioner's mother as a witness after Petitioner confessed his guilt to them and they realized that her version of events was not credible. Counsel was thus aware of the potential alibi witness, investigated her, and had legitimate reasons not to present her at trial – namely their ethical concerns about her veracity and the viability of the defense.

Counsel's decision not to call Petitioner's mother as an alibi witness due to concerns about her credibility was reasonable. *See, e.g., Stadler v. Berghuis*, 483 F. App'x 173, 176-77 (6th Cir. 2012).

Given such issues with the purported alibi witness, trial counsel may have also reasonably believed that contesting the prosecution's case and casting doubt on the credibility of the victim would be more effective than presenting an alibi defense which could be subject to significant challenge. *See, e.g., Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013) (stating that sometimes it may be "better to try to cast pervasive suspicion of doubt" by challenging the prosecution's case

than to "strive to prove a certainty that exonerates"). To be sure, the record indicates that trial counsel challenged the police investigation and the victim's credibility and presented a solid reasonable doubt defense. Again, the fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *Moss*, 286 F.3d at 859. Petitioner fails to show that trial counsel's performance was deficient or that he was deprived of a substantial defense. He thus fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the Petition for a Writ of Habeas Corpus.

Before Petitioner can appeal this decision, a Certificate of Appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A COA may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. The Court **DENIES** a COA.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a). The Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal. This case is closed.

**IT IS SO ORDERED**.

                                                      s/ Victoria A. Roberts
                                                      VICTORIA A. ROBERTS
                                                      UNITED STATES DISTRICT JUDGE

Dated: May 6, 2022